# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| OSBORNE S. MALONEY,<br><br>Petitioner,<br><br>v.<br><br>PATRICK NOGAN, et al.,<br><br>Respondents. | Civil Action No. 14-1548 (FLW)<br><br>OPINION |

## I.  INTRODUCTION

This matter has been opened to the Court by Petitioner Osborne S. Maloney's filing of a *pro se* petition for a writ of habeas corpus challenging his New Jersey state court conviction pursuant to 28 U.S.C. § 2254.  For the reasons explained in this Opinion, the Court will deny the petition and will also deny a certificate of appealability.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The State alleged that Petitioner was part of a four-person conspiracy to commit a targeted armed robbery of business owner Syoma ("Sam") Shnayder and his wife Rita at their home on August 19, 2005.  The State's theory of the case was that Igor Chichelnitsky was the ringleader, Nathan Jakubov was driver of the getaway car, and Petitioner and Juan Rodriguez executed the planned armed robbery, which went awry and resulted in Sam being shot in the abdomen by Petitioner.  The four men were arrested shortly after the robbery.[1]

---

[1] This overview is taken from the opinion issued by the New Jersey Supreme Court.  *See State v. Maloney*, 216 N.J. 91 (2013).

1

Rodriguez pleaded guilty to armed robbery and testified against Petitioner at trial. (*See* ECF No. 13-1, Trial Tr. dated 9/22/2009 at 63:1-65-6.) At trial, Rodriguez testified that he, Petitioner, and Jakubov "scop[ed] out" the victims' home in Monroe Township on August 16 or 17, 2005. (*Id.* at 71:7-72:16.) On August 19, 2005, the three men returned to the victims' home. (*Id.* at 122:24-124:25.) Jakubov stayed in the car while Petitioner and Rodriguez walked towards the home wearing black masks covering their faces. (*Id.* at 131:11-132:2.) Petitioner carried a .38 caliber handgun and a knife, and Rodriguez carried a 9–millimeter handgun. (*Id.*) Rodriguez testified that Petitioner put a knife to Sam's throat and Rodriguez put hand ties on Sam's hands. (*Id.* at 125:9-126:15.) Rodriguez also testified that Rodriguez took $7000 dollars from a table in the kitchen and two watches from the kitchen. (*Id.* at 126:20-127:6.) Rita came home during the robbery, but managed to escape to a neighbor's house, and Sam was shot in the left side of his abdomen. (*Id.* at 127:25-130:9) Rodriguez testified that he was upstairs looking for more items to steal when he heard the gunshot. (*Id.* at 127:7-16; 129:3-12.) Rodriguez further testified that he came downstairs and saw Petitioner fleeing from the home. (*Id.*)

Rodriguez testified that he left the home and was discovered by police several blocks away. The officer conducted a pat down search, which revealed two cell phones, two watches, $7000 in cash, and a black mask in Rodriguez' back pocket. (*Id.* at 132:17-133:13.) At police headquarters, Rodriguez agreed to make a telephone call to Petitioner and Jakubov while the police listened. In relevant part, Rodriguez asked Petitioner to come back and get him, and informed them that he had $7000 and two expensive watches.[2] (*Id.* at 134:25-136:5.)

---

[2] Although it is not mentioned in the New Jersey Supreme Court's factual recitation, Rodriguez recanted his testimony during a hearing outside the presence of the jury and then recanted the recantation in front of the jury. At the hearing, Rodriguez, abruptly and without prompting, declared that Petitioner actually had nothing to do with the crime, and stated that the crime was committed by a man from Brooklyn named "Anthony," and that Anthony had been killed

In contrast to Rodriguez' testimony, Petitioner testified at trial that he was not a participant in the planning or commission of the robbery. (ECF No. 13-3, Trial Tr. dated 9/28/2007 at 121-141.) He admitted that he had previously traveled in Jakubov's car, and had traveled to Monroe in Jakubov's vehicle in early August 2005 with Jakubov and Rodriguez; however, he denied knowing the purpose of the trip and denied that the two men asked Petitioner to return to the area at a later date. (*Id.* at 126:17-129:3.) Petitioner admitted that on the day after the armed robbery and shooting, he took a taxi from New York City to a hotel in Monroe Township to pick up Rodriguez in the hopes of obtaining the proceeds from the sale of watches stolen from the victim's home. (*Id.* at 129:16-133:6; 140:13-141:4.)

At trial, Petitioner testified as follows on direct:

> [Defense Counsel]: Did you come down to Monroe Township on August 20th, 3 o'clock in the morning?
>
> [Defendant]: Yes, ma'am.
>
> Q. And how did you come to wind up coming down to Monroe Township?
>
> A. All right. Nathan [Jakubov] was with a girl that I hooked him up with.
>
> Q. What's that girl's name?
>
> A. Asia.
>
> Q. Do you know her last name?
>
> A. I don't recall her last name. I don't, ma'am, no. Nathan was with Asia, the girl I hooked him up with. So, Asia called me and said Nathan—

---

immediately after the crime. (*See* ECF No. 13-2, Trial Tr. 9/26/2007 at 50:2-51:25.) Rodriguez stated that he named Petitioner because he had been pressured by police to name a codefendant. (*Id.* at 51:18-25.) Rodriguez subsequently retracted that story in front of the jury, stating that he was the victim of threats from fellow county-jail inmates regarding his testimony. (*Id.* at 109:17-22; 139:11-140:8.) Rodriguez admitted during cross examination that he had lied to police for eight hours after his arrest when he stated that he did not have a gun during the crime. (*Id.* at 118:13-23.)

3

[Assistant Prosecutor]: Objection, hearsay. [Judge]: Sustained.

Q. Did you receive a telephone call that evening?

A. Yes, ma'am.

Q. And as a result of that telephone call—did the telephone call come from Asia?

A. Yes, ma'am.

Q. As a result of that telephone call, did you do something?

A. Yes, ma'am.

Q. And what was that?

A. I went to, I went—I reported to Asia as a result of that telephone call, ma'am.

Q. And then what happened?

A. Then when I reported to her, she was telling me what happened with Nathan.

Q. Okay. And this was what time?

A. This is about midnight. Midnight, a little past midnight, yeah.

Q. And what did you do after that? What happened after that?

A. I got the property from Asia, Nathan's property, like his chain, his wallet, his phone stuff, like that.

Q. Where was Nathan if you know?

A. She had told me that he had got arrested. He got pulled over.

Q. Okay. And then what happened?

A. Then while I had the phone, Juan Rodriguez called. I answered the phone. He told me that—

[Assistant Prosecutor]: Objection, hearsay. [Judge]: Sustained.

Q. Did Juan Rodriguez ask you to do anything?

A. Yes, ma'am.

Q. And as a result of Juan Rodriguez asking you to do something, what did you do?

A. I called the cab, Liberty Cab ... and asked them, can I get a cab to Jersey. He said I have to wait about 30 minutes, 30, 45 minutes, for a cab to take me to Jersey.

Q. Did Juan tell you he had any money on him?

A. No, no, ma'am.

4

> Q. What did he tell you he had on him?
>
> A. He told me—
>
> [Assistant Prosecutor]: Objection.
>
> A. He told me he had two watches, ma'am. [Judge]: Sustained.
>
> Q. Did you have any reason to believe after speaking with Juan that he had money to go hire his own cab or limousine from where he was?
>
> A. No ma'am.
>
> Q. And did you go in the cab?
>
> A. Yes, ma'am.
>
> Q. And at some point, did you arrive in New Jersey?
>
> A. Yes, ma'am.
>
> Q. And what happened when you arrived in New Jersey?
>
> A. When I got in front of the hotel, I called him back and told him I was in front of the hotel, to come outside, but as soon as I looked around, there was a lot of cops around and they pulled me out the car and leave me on the floor and asked me my name. I said my name is Osborne Maloney.

(*Id.* at 130:5-133:6.) Petitioner also admitted at trial that he thought he would be reimbursed for his taxicab fare by Rodriguez, and that he would be paid some money after two stolen watches "were swapped." (*Id.* at 140:13-141:4.)

At a conference to discuss the jury charge, Petitioner's counsel requested that the jury be instructed on attempted theft by receiving stolen property as a lesser-included offense of robbery. (ECF No. 13-4, Trial Tr. (undated) at 56:12-60:13; 66:24-72:24.) The prosecutor objected, arguing such charge lacked a rational basis in the record for a jury to find that Petitioner received stolen property during the commission of a robbery. (*Id.*) The judge denied the request. (*Id.* at 75:3-79:12.) Petitioner did not request an accomplice liability instruction or object to the final jury charge.

The jury found Petitioner guilty of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5–2 and 2C:15–1; second-degree conspiracy to commit burglary, N.J.S.A. 2C:5–2

5

and 2C:18–2; two counts of first-degree armed robbery, N.J.S.A. 2C:15–1; second-degree burglary, N.J.S.A. 2C:18–2; second-degree possession of a weapon (a handgun) for an unlawful purpose, N.J.S.A. 2C:39–4a; and third-degree criminal restraint, N.J.S.A. 2C:13–2.

The Appellate Division affirmed his convictions, but remanded the matter to correct Petitioner's judgment of conviction. *See State v. Maloney*, No. A-6320-06T3, 2011 WL 3180489, at *8 (N.J. Super. Ct. App. Div. July 28, 2011), aff'd, 216 N.J. 91, 77 A.3d 1147 (2013). Petitioner sought certification on two issues. First, Petitioner contended that his convictions should be reversed based on the judge's failure to instruct the jury *sua sponte* on accomplice liability, pursuant to N.J.S.A. 2C:2–6 and *State v. Bielkiewicz*, 267 N.J. Super. 520 (App. Div. 1993). Second, Petitioner contended that reversal was required because the judge refused to charge two lesser-included offenses as required by *State v. Freeman*, 324 N.J. Super. 463 (App. Div. 1999) and *State v. Thomas*, 187 N.J. 119 (2006). (*See* ECF No. 16, Petitioner's Letter Petition for Certification dated August 11, 2011.) The Supreme Court subsequently granted certification, and affirmed the Appellate Division's decision in a published Opinion. *See State v. Maloney*, 216 N.J. 91 (2013).[3] Petitioner did not file a petition for post-conviction relief.

Petitioner's initial habeas petition was docketed on March 10, 2013, but was unsigned and was not submitted on the correct form. (*See* ECF No. 1.) Petitioner submitted a signed Amended Petition on April 14, 2014. (ECF No. 6.) The Amended Petition raises a single ground for relief which appears to combine the two grounds for relief that he raised to the New Jersey Supreme Court: "Lack of accomplice liability instruction and trial court's refusal to charge the lesser-included offense of robbery deprived Petitioner of a fair trial." (ECF No. 6, Am. Pet. at 6.) The Court Ordered Respondent to file its Answer, which was submitted on June

---

[3] The New Jersey Supreme Court's decision is discussed in the Analysis section of this Opinion.

9, 2014. (ECF Nos. 7, 11.) Petitioner submitted his traverse on July 18, 2014. (ECF No. 19.) The matter is fully briefed and ready for disposition.

### III. ANALYSIS

#### a. Standard of Review

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated petitioner's federal claim on the merits,[4] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d) (1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's

---

[4] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th [at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 529 U.S. at 413. With regard to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### b. Petitioner is not Entitled to Relief on his Habeas Claim

Petitioner raised two grounds for relief to the New Jersey Supreme Court. First, he contended that his convictions should be reversed based on the judge's failure to instruct the jury *sua sponte* on accomplice liability, pursuant to N.J.S.A. 2C:2–6 and *State v. Bielkiewicz*, 267 N.J. Super. 520, 632 A.2d 277 (App. Div. 1993). Second, he contended that reversal was required because the judge refused to charge two lesser-included offenses as required by *State v. Freeman*, 324 N.J. Super. 463 (App. Div. 1999) and *State v. Thomas*, 187 N.J. 119 (2006). (*See* ECF No. 16, Petitioner's Letter Petition for Certification dated August 11, 2011.) Petitioner appears to raise those same claims in his habeas petition, albeit as a single claim for relief. (ECF No. 6, Am. Pet. at 6.)

Respondent contends in its Answer that Petitioner has not raised a constitutional claim and has alleged only violations of state law, which do not support a claim for habeas relief. (ECF No. 11, Answer at 8-11.) This Court agrees that Petitioner did not present his claims to the New Jersey Supreme Court as <u>federal claims</u>. He did not point to any United States Supreme Court decisional law, or even lower federal court decisions, in support of his claim. (*See* ECF No. 16.) In *Baldwin v. Reese*, 541 U.S. 27, (2004), the Supreme Court held that a habeas petitioner did not "fairly present" a federal claim where the petitioner failed to explicitly state that the claim was federal and failed to cite federal law. *Id.* at 32–33. Cf. *Howell v. Mississippi*, 543 U.S. 440 (2005) (dismissal of writ of certiorari) (concluding that petitioner did not "properly present his claim [to a state court] as one arising under federal law" because "[i]n the relevant argument, he did not cite the Constitution or even any cases directly construing it, much less any of [the Supreme] Court's cases"). In his petition for certification, Petitioner did, however, explicitly rely on his briefs submitted in the Appellate Division. (*See* ECF No. 16 at 1.) Petitioner's brief to the Appellate Division states in passing that the failure to charge Petitioner on lesser included offenses "was in violation of [his] rights to due process and a fair trial under both the Fourteenth Amendment and the corresponding provisions of the state constitution." (*See* ECF No. 15-2, Petitioner's Appellate Brief at 23.) Petitioner's appellate brief also cites to *Vujosevic v. Rafferty*, 844 F.2d 1023, 1027-28 (3d Cir. 1988), and states that "[i]n the Third Circuit, the failure to charge an appropriate lesser-included offense is a violation of the constitutional guarantee of due process." (*Id.*) Petitioner's state court submissions otherwise do not frame the issues in federal constitutional terms.

To the extent that Petitioner's constitutional claims were not fairly presented and are thus unexhausted and/or procedurally defaulted, this Court can nevertheless deny them on the merits

under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir.2005) ("Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

Here, Petitioner's claim deals with alleged errors in charging the jury. In this regard, the United States Supreme Court and Third Circuit have made clear that it is not the role of the federal courts to review state court jury instruction rulings that are based on state law; rather, the federal court's "task is to determine whether [a petitioner] 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Barkley v. Ortiz*, 209 F. App'x 120, 124 (3d Cir. 2006) (rejecting claim based on the failure to charge accomplice liability which was rooted in violations of state law) (quoting 28 U.S.C. § 2254); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions."). Questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review.[5] *See Engle v. Isaac*, 456 U.S. 107 (1982); *Henderson v. Kibbe*, 431 U.S. 145 (1977); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 309 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991); *Grecco v. O'Lone*, 661 F. Supp. 408, 412 (D.N.J. 1987). Only where the jury instruction is "so prejudicial as to amount to a violation of

---

[5] Under federal law applicable in this habeas review, generally, matters of state law and rules of procedure are not reviewable in a federal habeas petition. The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Horn*, 120 F.3d 400, 414 (3d Cir.1997) (citations omitted), cert. denied, 522 U.S. 1109 (1998).

due process and fundamental fairness will a habeas corpus claim lie." *Id.* \*6 "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71-72. Rather, the district court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson*, 431 U.S. at 154 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). Moreover, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state's court judgment is even greater than the showing required to establish plain error on direct appeal." *Id.* A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense ... must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).

Here, Petitioner alleges that his constitutional rights were violated because the trial judge declined to charge the jury on lesser included offenses. In *Beck v. Alabama*, 447 U.S. at 627, the Supreme Court held that the death penalty may not be imposed "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." *See also Hopper v. Evans*, 456 U.S. 605, 611 (1982) (holding that due process does not require lesser included offense instruction in death penalty case where there is no lesser included offense under state law). The Court left open the question of whether instructions on lesser included offenses were required in non-capital cases. *Id.* The Third Circuit has held that trial courts must, when requested, charge a lesser included offense so that the jury does not convict a defendant of a crime more serious than the jury believes the

12

defendant actually committed merely because the jury believes the defendant had some degree of involvement and does not want to set the defendant free. *See Vujosevic*, 844 F.2d at 1027 (citing *Keeble v. United States*, 412 U.S. 205, 212–13 (1973)). *But see Geschwendt v. Ryan*, 967 F.2d 877, 884 n .13 (3d Cir.) (observing that the Supreme Court, in *Schad v. Arizona*, 501 U.S. 624 (1991), cast doubt on the theory that due process always requires the court to instruct on a lesser included offense in non-capital offenses by applying a harmless-error standard; conviction of an offense two rungs higher up the ladder is a reliable indicator that a jury would not have convicted of the least included offense that was not charged), *cert. denied*, 506 U.S. 977 (1992);[6] *see also Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error."). Other circuits have held that the failure to give lesser included offense instructions in a non-capital case does not present a constitutional question. *See Johnson v. Keith*, 726 F.3d 1134, 1135 n. 2 (10th Cir. 2013) ("[N]either this court nor the Supreme Court has recognized a federal constitutional right to a lesser included instruction in non-capital cases."); *Carney v. Fabian*, 487 F.3d 1094, 1098 (8th Cir. 2007) ("Because [t]he Supreme Court has never held that due process requires the giving of lesser-included-offense instructions in noncapital cases, the trial court's

---

[6] After the Court of Appeals decided *Vujosevic*, the United States Supreme Court rendered its decision in *Schad v. Arizona*, 501 U.S. 624 (1991). In *Schad*, Petitioner was tried for capital offenses, and in accordance with *Beck*, the jury was given the option of finding Petitioner guilty of the noncapital offense of second-degree murder. *See id.* at 645-46. However, Petitioner argued that the trial court should have charged the jury on every lesser included noncapital offense supported by the evidence, in his case, robbery. *See id.* at 646. The Supreme Court disagreed, stating that "the central concern of *Beck* simply is not implicated in the present case, for petitioner's jury was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence." *Id.* at 647. In *Schad's* case, the jury was given a choice of capital murder and second-degree murder, and the Supreme Court was "satisfied that the second-degree murder instruction ... sufficed to ensure the verdict's reliability." *Id.* at 647-48.

13

refusal to give the heat-of-passion manslaughter instruction here cannot be contrary to clearly established federal law.") (internal citation and quotation marks omitted).

Here, the Court finds that the failure to give the lesser-included offense instructions was not contrary to, or an unreasonable application of, Supreme Court precedent because the Supreme Court has never held that the Due Process Clause guarantees the right of a defendant to have the jury instructed on a lesser included offense in a non-capital case. Furthermore, the lesser included offense instruction is constitutionally required in a capital case only when warranted by the evidence; here, as discussed below, the New Jersey Supreme Court determined that the lesser included offenses at issue here were <u>not</u> warranted by the evidence. Those findings are entitled to a presumption of correctness under 28 U.S.C. 2254(e)(1), which has not been rebutted by Petitioner.

In Petitioner's case, the New Jersey Supreme Court analyzed the relevant state law statutory provisions and found that the requested lesser included offenses of attempted theft by receiving stolen property and conspiracy to receive stolen property <u>do not</u> overlap with the offense of robbery:

> We also conclude that defendant's request that the judge instruct the jury on two lesser-included offenses of robbery—attempted theft by receiving stolen property and conspiracy to receive stolen property—was properly denied. The statutory elements of those offenses, set forth above, do not overlap. Compare N.J.S.A. 2C:15–1a, with N.J.S.A. 2C:20–7a. We agree with the trial court and the Appellate Division's reasoning that robbery is a crime against a person, which focuses on the use of force or threatened use of force against the victim. See N.J.S.A. 2C:15–1a. Attempted theft by receipt of stolen property and conspiracy to receive stolen property, on the other hand, are property crimes. See N.J.S.A. 2C:20–7a.

*Maloney*, 216 N.J. at 110. The New Jersey Supreme Court further found that "[b]eyond the lack of shared statutory elements, the record does not provide a rational basis for charging attempted

14

theft by receipt of stolen property or conspiracy to receive stolen property as a lesser included offenses of robbery" because Petitioner "testified that he had no involvement whatsoever with the conspiracy, burglary, armed robbery or shooting of the victim." (*Id.*) As such, the New Jersey Supreme Court determined that the "factual scenario could not support a finding that [Petitioner's] requested attempt and conspiracy jury charges were lesser-included offenses." (*Id.*) Based on its review of the record, the Court determined that "the receipt of stolen property offenses do not share a common factual nucleus with the robbery charge in this case" as "[t]he robbery took place at the Shnayder's home hours before Rodriguez contacted defendant to request a ride home. Defendant adamantly denied being present at the robbery and instead testified that he only went to the hotel in the early morning hours after the robbery to pick up watches that were stolen from the Shnayder's home." *Maloney*, 216 N.J. at 110–11.

Furthermore, any error of state law regarding the New Jersey Supreme Court's determination cannot form the basis for habeas relief as habeas relief is not available for violations of state law. *See Estelle*, 502 U.S. at 71–72 ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); *Engle*, 456 U.S. at 119 ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief"). In addition, the finding that the evidence did not support instructions on the lesser included offenses of attempted theft by receiving stolen property or conspiracy to receive stolen property is entitled to a presumption of correctness under 28 U.S.C. 2254(e)(1) and Petitioner has not rebutted this presumption of correctness by clear and convincing evidence. In sum, habeas relief is not warranted on the alleged failure of the court to charge the jury on lesser included offenses because this is not a death penalty case governed by *Beck*, and because the failure to instruct on a

15

lesser included offense does not violate due process where such an instruction is not supported by the evidence.

Petitioner's claim that he was deprived of a fair trial by the failure of the Court to *sua sponte* charge the jury on accomplice liability also fails to state a federal claim for relief, as Petitioner did not raise this claim as a violation of his federal constitutional rights. *See Barkley*, 209 F. App'x at 124 (rejecting claim based on the failure to charge accomplice liability because the claim was raised as a violation of state law) (quoting 28 U.S.C. § 2254). "Furthermore, to the extent that he tries to do so, [Petitioner] may not now raise federal legal or constitutional arguments that he previously failed to raise in state court[]" absent a showing of "cause and prejudice or that a fundamental miscarriage of justice would result." *Id.* (citing *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001)(internal quotation omitted)). Here, Petitioner has not suggested any grounds on which default might be excused. (*See id.*)

In rejecting Plaintiff's argument that the trial court erred in failing to sua sponte charge the jury on accomplice liability, the New Jersey Supreme Court analyzed the relevant state law for providing a jury instruction on accomplice liability. *See Maloney*, 216 N.J. at 105-06. As explained by the Court, "[w]hen the State's theory of the case only accuses the defendant of being a principal, and a defendant argues that he was not involved in the crime at all, then the judge is not obligated to instruct on accomplice liability." *Maloney*, 216 N.J. at 106 (citing *State v. Crumb*, 307 N.J. Super. 204, 221–22 (App. Div. 1997), *certif. denied*, 153 N.J. 215 (1998). The Court then rejected Petitioner's claim as follows:

> We hold that the judge did not commit plain error by failing to *sua sponte* instruct the jury on accomplice liability. Further, even if defendant had requested such a charge, the accomplice liability instruction would not have been warranted because it was not grounded in a rational basis in the trial evidence.

> First, we note that defendant's reliance on inconsistencies in the jury's verdict to bolster his argument that the jury might have convicted him as an accomplice rather than a principal is unpersuasive because the verdicts are returned long after the jury has been instructed. Moreover, "[o]ur system of justice has long accepted inconsistent verdicts as beyond the purview of correction by our court[ ]." *State v. Kelly*, 201 N.J. 471, 487, 992 A.2d 776 (2010).
>
> Moreover, defendant was charged in the indictment as a principal in the robbery and attempted murder. The State presented proofs consistent with the theory that Rodriguez and defendant were the only conspirators who entered the home and interacted with Sam and his wife. Rodriguez testified that defendant shot Sam. In addition, defendant's DNA was recovered from items found in Jakubov's Lexus, which was driven to and from the scene of the crime, long before the time he admitted that he returned to Monroe Township in a taxi.
>
> Defendant, on the other hand, testified that he did not go to the victims' home the night of the robbery and shooting. Rather, he admitted that his only involvement in this case arose when he answered a call from Rodriguez made to Jakubov's telephone, during which Rodriguez asked defendant to pick him up from a hotel in New Jersey. Defendant went to the hotel expecting to receive the proceeds of some of the items stolen during the armed robbery.
>
> We conclude that none of the evidence presented by the State could support a jury finding that defendant was liable as an accomplice rather than as a principal. Therefore, defendant suffered no prejudice by the judge's failure to *sua sponte* charge the jury on accomplice liability. *See, e.g., Crumb, supra*, 307 N.J. Super. at 221–22 [citations omitted].
>
> Further, despite defendant's arguments, the evidence could not support a finding that defendant had a lesser intent than that required to commit robbery. *See Crumb, supra*, 307 N.J. Super. at 221–22, 704 A.2d 952. The jury had two options. It could credit Rodriguez's testimony that defendant was equally involved in planning and committing the robbery, or it could credit defendant's contrary testimony. The evidence could not support a finding that defendant was guilty as an accomplice in the armed robbery, shooting or burglary.

*Id.* at 108-110.

Once again, any error of state law regarding the New Jersey Supreme Court's determination that Petitioner is not entitled to an instruction on accomplice liability cannot form the basis for habeas relief as habeas relief is not available for violations of state law. *See Estelle*, 502 U.S. at 71–72. In addition, the finding that the evidence did not support a *sua sponte* instruction on accomplice liability is entitled to a presumption of correctness under 28 U.S.C. 2254(e)(1), and Petitioner has not rebutted this presumption of correctness by clear and convincing evidence.

The Supreme Court has stated that the failure to give an instruction may violate due process where the error "so infected the entire trial that the resulting conviction violate[d] due process." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1997) (citation omitted). Here, however, the Court agrees with the New Jersey Supreme Court's finding that, if believed, the evidence against Petitioner did not provide a rational basis for any of the requested instructions. Accordingly, Petitioner has not shown that that the failure to provide charges on the lesser-included offenses or on accomplice liability infected the entire trial and violated due process, and he is not entitled to habeas relief. In summary, the New Jersey Supreme Court's adjudication of this due process claim was not based on an unreasonable determination of the facts in light of the evidence presented and did not result in a decision that was contrary to, or involved an unreasonable application of clearly established Supreme Court precedent. As such, the Court will deny relief on Petitioner's habeas claim.

### c. The Court will Deny a Certificate of Appealability

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, jurists of reason could not disagree that Petitioner's claims are lacking in merit. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV. CONCLUSION

For the reasons expressed in this Opinion, the Court denies the Petition and denies a certificate of appealability. An appropriate Order follows.

/s/      Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: April 19, 2017